IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:
FF ACQUISITION CORP. D/B/A FLEXIBLE-FLYER     CHAPTER 11
Debtor     CASE NO. 05-16187

**MOTION FOR APPROVAL OF EMPLOYEE RETENTION AND
INCENTIVE PROGRAM FOR KEY EMPLOYEES OF THE DEBTOR**

COMES NOW FF Acquisition Corp. d/ba Flexible-Flyer (the "Debtor," or the "Movant") and files this its Motion for Approval of Employee Retention and Incentive Program for Key Employees of the Debtor (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

### Introduction

1. On September 9, 2005 (the "Petition Date"), the Movant filed with this Court its Voluntary Petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). The Debtor remains in possession of its assets and properties as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner or official committee has been appointed in this case.

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

### Background

3. Prior to the Petition Date, Movant was engaged in the manufacturer, sale, distribution and marketing of metal swing sets, hobby horses, go-carts and compact utility vehicles. The

Debtor's pre-petition manufacturing operations were significantly impacted when it could not obtain commitments from its major customer base for purchases of finished goods in the future. The Debtor has made the decision to liquidate, in an orderly manner through Chapter 11, substantially all of its assets in this Chapter 11 case.

### Relief Requested

4. Movant seeks approval of the Employee Retention and Incentive Program described in this Motion ("Retention and Incentive Program" or the "Program"). The Retention and Incentive Program is designed to induce key employees of the Debtor to remain with the company through plan confirmation or sales of business units, or a combination thereof, and thereby provide a continuity of management and assistance in achieving the ultimate goal of maximizing the value of the Debtor.

5. The retention of the Debtor's key employees is vital to the Debtor's efforts to maintain and enhance the value of its estate. Further, an integral part of the Debtor's liquidation is the stabilization and motivation of its key employees during this liquidation process. These key employees are intimately familiar with the Debtor's businesses and are essential to maintaining a continuity of operation and leadership during the uncertainty of the liquidation process. Continuity of management is absolutely critical to the Debtor's liquidation efforts. If the Debtor is unable to maintain and provide incentives to these employees, valuable resources of information regarding the Debtor's operations may be lost and the chances of a successful liquidation will be greatly diminished. To further these goals, the Debtor has adopted the Retention and Incentive Program.

6. In addition to the foregoing, a Retention and Incentive Program will lessen the economic burden already suffered by these employees and will reward these employees for the

value/economic benefits generated by their efforts. In addition, as reductions in force were implemented, many employees assumed more duties without corresponding adjustments in their compensation. The Debtor's employees, who have continued to work diligently on behalf of the Debtor's estates and for the benefit of the Debtor's creditors, should be fairly and equitably rewarded for their efforts. The Retention and Incentive Program will do that.

7.  The Board of Directors of the Movant approved a retention and incentive program for key employees early in the bankruptcy process. Promises of such a program have influenced the retention of key employees since the filing of the petitions in September 2005. As explained to the key employees, the program would provide a retention bonus and related benefits to certain employees.

8.  Employees selected by the Debtor to participate in the Retention and Incentive Program will be offered individual employment contracts that will incorporate a salary and a retention and incentive component to remain employed by the Debtor for the period of time necessary for completing the sales or disposition of the Debtor's business segments and assets and, in some cases, through the winding up of the Debtor's operations. It is contemplated that such an employment agreement would provide the employee with significant incentive to remain employed by the Debtor through the terms of the employment agreement. The terms and conditions of one retention bonus and employment are incorporated in an agreement titled "Retention Bonus Agreement Between FF Acquisitions Corp. and Mike Earrey", a copy of which is attached, incorporated by referenced and marked as Exhibit "A". A similar agreement entered into by and between the Debtor and Bob Lochner is attached, incorporated by reference and marked as Exhibit "B". A related agreement entitled "Retention Bonus Agreement Between FF Acquisitions Corp. and

Shannon Webb", is attached, incorporated by referenced and marked as Exhibit "C".

9. The amount (the "Payment Amount") to be received by each employee selected to participate in the Retention and Incentive Program will be determined by the Debtor and is set forth in Exhibits "A", "B" & "C".

10. In order to be eligible to receive a payment under the Retention and Incentive Program on a Payment Date, a current employee must remain employed in good standing by the Debtor as set forth within Exhibits "A", "B" and/or "C".

11. The Retention and Incentive Program will be funded by cash generated by the Debtor from asset sales or collection of accounts receivables.

12. Pursuant to Bankruptcy Code Sections 363(b) and 105(a). the Debtor requests an order approving and authorizing the implementation of the proposed Retention and Incentive Program. Arguably, the implementation of the Retention and Incentive Program requires Court approval because it represents a proposed use of the Debtor's property outside the ordinary course of its business. Bankruptcy Code § 363(b)(I) provides, in pertinent part:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1). *See In re Buyer's Club Markets, Inc.,* 5 F.3d 455, 458 (10th Cir. 1993) (Debtor's severance plan adopted post-petition that was triggered only in the event that the Chapter 11 case converted to Chapter 7 which was a transaction out of the ordinary course of business and required notice and hearing); *In-re Media Central, Inc.,* 115 B.R. 119, 126 (Bankr. E.D., Tenn. 1990) (post-petition severance pay agreement with management team employees was a transaction out of the ordinary course of business and required notice and hearing): *In re Century Brass Prods., Inc.*

107 B.R. 8, 11 (Bankr. D. Conn. 1989) (same).

13.　The proposed use, sale or lease of property of the estate may be approved under Bankruptcy Code § 363(b) if it is supported by the sound business judgment of the Debtor's management. *See in re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 1796 (D. Del. 1991). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. *See, e.g., The Dai-Ichi Kangyo Bank, Ltd., Chicago Branch v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D.Del. 1999) (Court applied 'business judgment' standard in context of an employee incentive program under 11 U.S.C. § 363(b)); *Institutional Creditors of Continental Air Lines v. Continental Air Lines (In re Continental Air Lines)*. 780 F.2d 1223. 1226 (5th Cir. 1986) (court applied 'business judgment' standard in context of proposed 'use' of estate property). The business judgment standard is the appropriate test for considering the approval of employee retention plans in the context of a bankruptcy case. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. at 153; *In re American West Airlines, Inc.,* 171 B.R. 674 (Bankr. D. Ariz. 1994); *In re Interco, Inc.*, 128 B.R. 229 (Bankr. E.D. Mo. 1991).

14.　In determining whether to authorize the use, sale or lease of property of the estate under § 363(b), courts require the debtor to show a sound business purpose that justifies such actions. *In re Montgomery Ward Holding Corp.*, 242 B.R. 153; *In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176; *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983). In *In re Interco and American West Airlines,* both of which deal with employee retention programs, the courts concluded that the debtor is not required to demonstrate a reasonable probability of successful reorganization. Instead, both cases acknowledge that the determination of whether to approve such programs turns

on the facts and circumstances of each particular case. *In re Interco*, 128 B.R. at 233; *In re Momgomery Ward Holding Corp.*, 242 B.R. at 153. The debtor carries the burden of demonstrating that the particular use, sale or lease will assist the debtor's reorganization; however, a party objecting is required to produce evidence that supports their objections. *In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176; *In re Lionel Corp.*, 722 F.2d at 1071.

15. The Retention and Incentive Program is amply supported by the Debtor's sound business judgment. The Retention and Incentive Program is a critical component to the success of the Debtor's continuing efforts to maintain and enhance the value of its assets in order to liquidate or maximize such value through a sale of one or more business units, or a combination thereof. The Retention and Incentive Program is designed to keep critical full-time employees working for the Debtor during the sale/liquidation process. The Debtor's key employees need to be given an incentive to remain with the Debtor during these unpredictable and volatile times. The key employees are fully aware that, in this bankruptcy, liquidation scenarios create a significant risk of job elimination. Without the proposed economic incentives, key employees may leave, causing remaining key employees to face additional burdens of operating the Debtor's facilities with a further reduced workforce.

16. Although the Court may properly authorize the Debtor's request under Bankruptcy Code § 363(b)(1), the Court may also approve the Retention and Incentive Program pursuant to Bankruptcy Code § 105(a). That section provides in pertinent part that "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 D.S.C. § 105(a). Under this section, the Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of the debtor's assets.

*See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy. . . is that equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.")

17. No other program exists to remain key employees, and approval of the Retention and Incentive Program is critical to the Debtor's liquidation efforts. Accordingly, it is in the best interest of the estates that the Court authorize and approve the Retention and Incentive Program.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that this Court enter an order approving the Retention and Incentive Program, as described herein, including approval of the Agreements attached as Exhibits "A", "B" and "C" the payment of the incentive bonuses as described herein, and granting the Debtor such other relief as just and appropriate.

Respectfully submitted this the 20th day of October, 2005.

FF ACQUISITION CORP.
D/B/A FLEXIBLE-FLYER

By Its Attorneys,
HARRIS & GENO, PLLC

By: _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jeffrey K. Tyree; MSB No. 9049
Melanie T. Vardaman; MSB No. 100392
Harris & Geno, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile

F:\Users\Bankrupt\Flexible-Flyer\Pleadings\Flexible Flyer\Motion for Approval of Employee Retention.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
Suite 706, A. H. McCoy Federal Building
100 West Capitol Street
Jackson, MS  39269

THIS, the _____ day of October, 2005.

_____
Craig M. Geno

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:
FF ACQUISITION CORP. D/B/A FLEXIBLE-FLYER     CHAPTER 11
Debtor     CASE NO. 05-16187

# EXHIBIT "A"

# RETENTION BONUS AGREEMENT
# BETWEEN FF ACQUISITION CORP. AND MIKE EARREY

This Agreement is made this 6th day of September, 2005, by and between FF Acquisition Corp., located at 100 Tubb Avenue, West Point, Mississippi ("FF") and Mike Earrey, located at 2623 Stivman Circle, Columbus, Mississippi ("Earrey").

In order to induce the continued employment of Earrey by FF, the parties agree to the following:

    FF agrees to increase Earrey's annual salary to one hundred twenty-five thousand dollars ($125,000.00) upon the filing of a petition in bankruptcy by FF. Earrey shall be paid the sum of five thousand two hundred eight dollars and thirty-three cents ($5,208.33) on the 15th and last day of the month. Should either day fall on a weekend and/or holiday then payment shall be made to Earrey on the last preceding business day.

    FF agrees to pay to Earrey a retention bonus in the amount of sixty-two thousand five hundred dollars ($62,500.00)("Retention Bonus") on the one hundred and twentieth day after the bankruptcy filing, provided that Earrey maintains his full-time position and properly performs his duties as an officer of FF during this time period.

    FF shall not make any pro-rata distribution to Earrey nor pay the Retention Bonus if Earrey voluntarily resigns from FF or is terminated by FF for gross negligence or intentional misconduct prior to the one hundred and twenty day anniversary of the bankruptcy filing. Notwithstanding the foregoing, FF shall pay to Earrey the Retention Bonus if the liquidation of FF is concluded prior to the one hundred and twenty day anniversary of the bankruptcy filing.

    FF agrees that if Earrey is still in the full-time employment of FF after the one hundred and twenty day anniversary of the bankruptcy filing then Earrey is eligible to earn a monthly bonus equal to the base salary he earned in that month. For each additional month that Earrey remains in the full-time employment of FF and properly performs his duties as an officer of FF, FF shall pay to Earrey his regular base salary along with a retention bonus in the amount of ten thousand four hundred sixteen dollars and sixty-six cents ($10,416.66).

    This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated herein and such understanding shall not be modified, except in writing, signed by the parties hereto.

    This Agreement is and shall be deemed to be a contract entered into and made pursuant to the laws of the State of Mississippi and shall be in all respects be governed, construed, applied and enforced in accordance with the laws of said State.

    To the extent necessary, this Agreement is subject to the approval of the bankruptcy court upon the filing of a Chapter 11 petition by FF.

1

FF Acquisition Corp.

By: _____
Robert T. Rahr

By: _____
Mike Earrey

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:
FF ACQUISITION CORP. D/B/A FLEXIBLE-FLYER         CHAPTER 11
Debtor                                             CASE NO. 05-16187

# EXHIBIT "B"

## RETENTION BONUS AGREEMENT
## BETWEEN FF ACQUISITION CORP. AND BOB LOCHNER

This Agreement is made this 9th day of September, 2005, by and between FF Acquisition Corp., located at 100 Tubb Avenue, West Point, Mississippi ("FF") and Bob Lochner, located at 11645 Vista Forest Drive, Alpharetta, Georgia ("Lochner").

In order to induce the continued employment of Lochner by FF, the parties agree to the following:

FF agrees to increase Lochner's annual salary to one hundred thirty-two thousand dollars ($132,000.00) upon the filing of a petition in bankruptcy by FF. Lochner shall be paid the sum of five thousand five hundred dollars ($5,500.00) on the 15th and last day of the month. Should either day fall on a weekend and/or holiday then payment shall be made to Lochner on the last preceding business day.

FF agrees to pay to Lochner a one percent (1%) retention bonus on all FF product sales that occur during the liquidation period that are directly attributable to his sales efforts alone ("Retention Bonus"). The Retention Bonus shall be paid to Lochner on the one hundred and twentieth day after the bankruptcy filing, provided that Lochner maintains his full-time position and properly performs his sales duties during this time period. Notwithstanding the foregoing, products that are sold at auction shall be excluded from the Retention Bonus if the winning bid price is less than the company's stated cost at standard.

FF shall not make any pro-rata distribution to Lochner nor pay the Retention Bonus if Lochner voluntarily resigns from FF or is terminated by FF for gross negligence or intentional misconduct prior to the one hundred and twenty day anniversary of the bankruptcy filing. Notwithstanding the foregoing, FF shall pay to Lochner the Retention Bonus if the liquidation of FF is completed prior to the one hundred and twenty day anniversary of the bankruptcy filing.

FF agrees that if Lochner is still in the full-time employment of FF after the one hundred and twenty day anniversary of the bankruptcy filing and FF records sales equal to or greater than four million dollars ($4,000,000.00) from the bankruptcy filing date until December 31, 2005, then Lochner is eligible to earn an additional one percent (1%) incentive bonus on all FF product sales that are directly attributable to his sales efforts alone. It is understood by Lochner that he must get prior approval from Mike Earrey (or should Mike Earrey not be with FF, then his replacement) prior to consummating any transaction where the sale price is equal to or less than the Company's stated cost at standard.

FF agrees to reimburse Lochner for all reasonable business expenses incurred in the legitimate pursuit of sales on a bi-monthly basis.

1

This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated herein and such understanding shall not be modified, except in writing, signed by the parties hereto.

This Agreement is and shall be deemed to be a contract entered into and made pursuant to the laws of the State of Mississippi and shall be in all respects be governed, construed, applied and enforced in accordance with the laws of said State.

To the extent necessary, this Agreement is subject to the approval of the bankruptcy court upon the filing of a Chapter 11 petition by FF.

FF Acquisition Corp.

By: _____
Robert T. Rahr

By: _____ 9.9.05
Bob Lochner

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:
FF ACQUISITION CORP. D/B/A FLEXIBLE-FLYER        CHAPTER 11
Debtor                                           CASE NO. 05-16187

# EXHIBIT "C"

# RETENTION BONUS AGREEMENT
# BETWEEN FF ACQUISITION CORP. AND SHANNON WEBB

This Agreement is made this 9th day of September, 2005, by and between FF Acquisition Corp., located at 100 Tubb Avenue, West Point, Mississippi ("FF") and Shannon Webb, located at 1985 Woodlake Road, Starkville, Mississippi ("Webb").

In order to induce the continued employment of Webb by FF, the parties agree to the following:

FF agrees to pay to Webb a retention bonus in the amount of six thousand three hundred seventy-five dollars and forty-two cents ($6,375.42) ("Retention Bonus") on Monday, October 3, 2005, provided that Webb maintains his full-time position and properly performs his duties as Controller of FF from the date of filing a Chapter 11 petition with the bankruptcy court in Mississippi until Friday, September 30, 2005. Webb shall forfeit the Retention Bonus, even if he maintains his full-time position with FF between the date of filing and September 30, if he does not complete the company's July, August and through the date of filing financials.

FF shall not make any pro-rata distribution to Webb nor pay the Retention Bonus if Webb voluntarily resigns from FF or is terminated by FF for gross negligence or intentional misconduct prior to September 30, 2005.

This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated herein and such understanding shall not be modified, except in writing, signed by the parties hereto.

This Agreement is and shall be deemed to be a contract entered into and made pursuant to the laws of the State of Mississippi and shall be in all respects be governed, construed, applied and enforced in accordance with the laws of said State.

To the extent necessary, this Agreement is subject to the approval of the bankruptcy court upon the filing of a Chapter 11 petition by FF.

FF Acquisition Corp.

By: _____
    Robert T. Rahr


By: _____
    Shannon Webb

1

| W. Larry Harris<br>Craig M. Geno<br>Robert F. Wood<br>Jeffrey K. Tyree<br>Melanie T. Vardaman*<br>J. Troy Johnston | **HARRIS & GENO, PLLC**<br>Attorneys at Law<br><br>587 Highland Colony Parkway (39157)<br>Post Office Box 3380<br>Ridgeland, Mississippi 39158-3380 | Telephone<br>601-427-0048<br><br>Facsimile<br>601-427-0050<br><br>E-Mail<br>hg@harrisgeno.com |
|---|---|---|

October 20, 2005

*also admitted in Tennessee

Mr. David Puddister, Clerk
United States Bankruptcy Court
Northern District of Mississippi
Cochran U.S. Bankruptcy Courthouse
703 Highway 145 North
Aberdeen, MS 39730

    Re:    *FF Acquisition Wheel Goods Corp.;* **Chapter 11; Case No. 05-16191**

Dear Mr. Puddister:

    Enclosed please find the original and one (1) copy of the first page of a Motion for Approval of Employee Retention and Incentive Program for Key Employees of the Debtor in the above-referenced matter. Please file the original and return the stamped-filed copy of the first page to me in the provided self-addressed, postage prepaid envelope.

    If you should have any questions, please let me know.

    As always, your assistance is appreciated.

    With best wishes, I remain

                                             Yours very truly,

                                             HARRIS & GENO, PLLC

                                             By _____
                                                     Craig M. Geno

CMG:ala
Enclosures

cc:    Sammye S. Tharp, Esq.
        Mr. Mike Earrey

F:\Users\Bankrupt\Flexible-Flyer\Letters\Clerk re Employee Retention Motion.wpd